# THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CATHY SADOWSKI

    Plaintiff

v.

GREATER NANTICOKE AREA
SCHOOL DISTRICT

    Defendant

3:10-CV-242
(JUDGE MARIANI)

## MEMORANDUM OPINION

### I. Introduction

Presently before the Court is Defendant's Motion for Summary Judgment (Doc. 31). The motion was referred to Magistrate Judge Methvin for a Report and Recommendation ("R&R"). In her R&R (Doc. 43), Judge Methvin recommended that the Court grant Defendant's Motion for Summary Judgment on all counts. Both Plaintiff and Defendant timely filed Objections to the R&R (Docs. 44, 48). Generally speaking, Plaintiff objected to Judge Methvin's recommendation that Defendant be granted summary judgment, and Defendant objected to the recommendation that this Court find Plaintiff had established a *prima facie* case of age discrimination.[1]

For the reasons that follow, the Court will adopt in part and reject in part Judge Methvin's R&R (Doc. 43), and grant Defendant's Motion (Doc. 31) in part and deny it in part.

---

[1] In particular, Defendant disputed that Plaintiff was qualified to teach at the time of her termination and that two younger male teachers (Mark Matousek and Lancer Benson) were treated more favorably. Furthermore, Defendant disputed that the age gap between Plaintiff and her replacement hire, Susan Walton, was significant enough to create an inference of age discrimination.

## II. Statement of Undisputed Facts

In 1982, Plaintiff received a Level I Instructional Certificate in Business Education and began serving as a substitute teacher with the Greater Nanticoke Area School District ("Defendant" or "District"). (Complaint ("Compl."), Doc. 1, at ¶¶ 5, 6). In 1999, she began teaching Business Education part-time for the District. (*Id.* at ¶ 7). She continued teaching part-time until she became a full-time teacher in February 2003. (*Id.* at ¶ 8). Based on communications with the Pennsylvania Department of Education ("DOE"), Plaintiff understood that she had six years to convert her Level I Certification to a Level II Certification.[2] (Sadowski Dep., Doc. 32, Ex. B, 17:15-18:3; 23:12-21). Plaintiff understood that any failure to convert the certification could result in the District being fined. (*Id.* at 55:2-5).

In April 2008, District Superintendent, Anthony Perrone ("Perrone") submitted to the DOE a worksheet detailing Plaintiff's education credits, which Plaintiff signed. (Ex. 8 to Perrone Dep., Doc. 32, Ex. C). Plaintiff was copied on a letter from the DOE in April 2008 stating that her Level I Instructional Certificate had lapsed at the end of the 2004-05 school year. (Apr. 15, 2008 DOE Letter, Ex. 7 to Perrone Dep.; Sadowski Dep. at 32:18-33:10). At that time, she had eighteen of the required twenty-four education credits to convert her Level I Certification to a Level II Certification. (Sadowski Dep., at 40:1-4). She, along with

---

[2] *See* 22 PA. CODE § 49.83 (requiring a teacher to obtain, *inter alia*, "twenty-four credit hours of collegiate study or its equivalent in credits from the Department," to convert a Level I Certification to a Level II Certification).

2

her union representative, Barb Zaborney, met with Perrone who informed Plaintiff she needed to complete her credits as quickly as possible. (*Id.* at 28:24-29:19).[3]

In the meantime, she took an unpaid leave of absence in early April 2008. (Compl. at ¶ 12; Sadowski Dep. at 40:5-12). However, Perrone informed her via letter in June 2008, that her unpaid leave had been converted to a termination because she did not have a Level II Certificate. (Sadowski Dep. at 40:13-16; *see also* June 16, 2008 Termination Letter, Ex. 6 to Perrone Dep.). Again, she along with her then-union representative, Jane Brubaker, met with Perrone. At this meeting, Perrone informed Plaintiff that she would have to re-apply for her position. (Sadowski Dep. at 42:18-24). At the time of her termination, Plaintiff was forty-nine years old, just short of her fiftieth birthday.[4] (Plaintiff's General Application for Pennsylvania Certificate, Ex. 6 to Sadowski Dep.).

Plaintiff soon thereafter obtained her Level II Instructional Certificate on August 1, 2008 from the DOE. (Compl. at ¶ 17).[5] She applied for her former position and interviewed with Perrone, but was not re-hired. (*Id.* at ¶¶ 18-19; Sadowski Dep. at 44:16-22). Instead, on or around August 19, 2008, the Board hired Susan Walton, aged forty.[6] (Walton Application for Teaching Position, Doc. 32, Ex. D; Sadowski Dep. at 46:7-10). At the time Walton was hired, Plaintiff had just turned fifty. Plaintiff personally spoke with one Board

---

[3] Plaintiff contends that Perrone submitted documentation to the DOE which erroneously stated that Sadowski was a full-time teacher, pre-maturely triggering her obligation to obtain a Level II Certificate and ultimately leading to her termination. (Sadowski Aff., Doc. 40, Ex. A, ¶¶ 11-15).

[4] The application indicates that Plaintiff was born on July 4, 1958.

[5] Perrone testified that he verified to the DOE that Plaintiff had completed the requirements for her Level II Certification by June 27, 2008. (Perrone Dep. at 65:9-16).

[6] Walton's application indicates that she was born on November 14, 1967.

member, Frank Vandermark, who informed Plaintiff that he had voted for Plaintiff and he "couldn't believe" that she had not been re-hired. (Sadowski Dep. at 47:4-48:4).

When asked why she believed Defendant hired Sue Walton instead of Plaintiff, she responded "I have no idea why the School District hired her instead of me, other than she was younger and maybe the pay would be cheaper. I don't know. I can't give you a definite answer on that." (*Id.* at 63:2-15). Likewise, no one with the District informed Plaintiff that she was not re-hired due to her age. (*Id.* at 63:16-23). Rather, Plaintiff questioned Walton's qualifications: "I just know that she wasn't a teacher for as long as I was." (*Id.* at 63:2-5).

Perrone recommended to the Board that it hire Sue Walton to fill Plaintiff's former position. (Perrone Dep. at 50:9-51:4). According to Perrone, Walton was more qualified than Plaintiff because Plaintiff's May 2008 letter requesting unpaid leave contained two typographical errors and Walton brought a binder of her previous work projects which particularly impressed him. (*Id.* at 70:22-71:4; 92:3-10; *see also* Plaintiff's May 6, 2008 Letter, Ex. 10 to Perrone Dep.).

### III. Analysis

a. Standard of Review of Magistrate Judge's Report and Recommendation

A district court may "designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition" of certain matters pending before the court. 28 U.S.C. § 636(b)(1)(B). If a party timely and properly files a written objection to a Magistrate Judge's

4

Report & Recommendation, the District Court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.* at § 636(b)(1); *see also Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011); Local Rule of the Middle District of Pennsylvania 72.3.

### b. Standard of Review on Motion for Summary Judgment

Through summary adjudication the court may dispose of those claims that do not present a "genuine issue as to any material fact." FED. R. CIV. P. 56(a). "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied* 507 U.S. 912 (1993).

### c. Discussion

#### i. Plaintiff's Termination

Title VII prohibits discrimination against an individual on the basis of that individual's "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(2). Furthermore, the Age Discrimination and Employment Act ("ADEA") prohibits employers from discriminating against individuals in hiring, discharge, compensation, terms, conditions, or privileges of employment on the basis of their age. *See* 29 U.S.C. § 623(a)(1). Because there is no evidence in the case of direct gender or age discrimination, the Court will apply the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), which is appropriate for both gender and age discrimination cases. *Burton v. Teleflex Inc.*, -- F.3d --, 2013 WL 616973, at *5 (3d Cir. 2013). The plaintiff bears the burden of showing a *prima facie* case of discrimination. *McDonnell Douglas*, 411 U.S. at 802.

To establish a *prima facie* case of gender discrimination under Title VII, Plaintiff must show that: "(1) she was a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) members of the opposite sex were treated more favorably." *Burton*, 2013 WL 616973, at *5 (citing *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005)). "A plaintiff may also meet the last element by showing that the adverse employment action 'occurred under circumstances

6

that could give rise to an inference of intentional discrimination.'" *Id.* (citing *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008)).

To establish a *prima facie* case of age discrimination under the ADEA, Plaintiff must show that: "(1) she is forty years of age or older; (2) the defendant took an adverse employment action against her; (3) she was qualified for the position in question; and (4) she was ultimately replaced by another employee who was sufficiently younger to support an inference of discriminatory animus." *Id.* (*citing Smith v. City of Allentown*, 589 F.3d 684, 689 (3d Cir. 2009).

It is undisputed that Plaintiff is a woman, was over the age of forty at the time of the events giving rise to this case, and that she suffered an adverse action when she was terminated. Thus, the parties agree that Plaintiff has established the first two elements of both her gender and age discrimination claims regarding her termination. What is in dispute is whether Plaintiff was qualified to teach when she was terminated and whether she has presented evidence that could give rise to an inference of discrimination.

Under state law, "No teacher shall teach, in any public school, any branch which [s]he has not been properly certificated to teach." 24 P.S. § 12-1202; *see also* 22 PA. CODE § 49.11(b) ("teachers and other professional personnel may not perform professional duties or services in the schools of this Commonwealth in any area for which they have not been properly certified or permitted."). In April 2008, Perrone submitted to the Pennsylvania DOE a worksheet detailing Plaintiff's education credits, which Plaintiff signed. (Ex. 8 to Perrone

Dep.). Soon afterwards, Perrone and Plaintiff received a letter from the DOE Bureau of Teaching Certification and Preparation stating that based on the information provided to it, Plaintiff's Level I "certificate lapsed at the end of the second semester of school year, 2004-05 and needed to be converted to Level II status by the beginning of the first semester of the 2005-06 school year." (Apr. 15, 2008 Letter, Ex. 7 to Perrone Dep.). As of the date of the letter, however, Plaintiff had "not been issued a Level II certificate and the current certificate [was] no longer valid for employment purposes as a teacher in the district." (*Id.*). Defendant argues that it terminated Plaintiff because her Level I Certificate had lapsed and she had not converted to a Level II Certificate. (*See* June 16, 2008 Termination Letter, Ex. 6 to Perrone Dep.). Under state law, then, Plaintiff could not continue teaching without her Level II Certificate. As her termination letter informed her, Plaintiff could reapply for her position if she "obtained [her Level II] certificate by the time the Board hires." (*Id.*).

Plaintiff was not qualified to teach when she was terminated, and thus, she has not established a *prima facie* case of either age or gender discrimination with respect to her termination claims (Counts I and III). Thus, when Plaintiff argues that after the DOE determined her Certificate had lapsed, "she would have been able to convert her Level I Instructor Certificate to a Level II Certificate within two months and prior to the start of the next school year," (Plaintiff's Counter-Statement of Facts, Doc. 40, ¶ 6) she acknowledges that at the time of her termination, she was short of the credits she needed.

To excuse her failure to obtain her Level II Certification in a timely manner, Plaintiff contends that Perrone submitted documentation to the DOE which erroneously stated that Sadowski was a full-time teacher, pre-maturely triggering her obligation to obtain a Level II Certificate and leading to her termination. (Sadowski Aff., Doc. 40, Ex. A, ¶¶ 11-15). In support of this assertion, Plaintiff argues that before Perrone submitted the two-page worksheet to the DOE, Perrone asked her to sign the second page, which listed only the school years from 2003 onward when she was working full-time (100%). (Plaintiff's Objections to R&R, Doc. 48, ¶¶ 16-19). The document plainly bears Plaintiff's signature, and Plaintiff does not deny that she signed the document. However, she alleges that Perrone purposely did not show her the first page, which indicates that when Plaintiff was on part-time status with the District, she was working half-time (50%) which purportedly counted as full-time status. Plaintiff claims this information was incorrect because she worked less than half-time between 1999 and 2003, and the DOE relied on this erroneous information to conclude that her Level I Certificate had expired six years from 1999, or the end of the 2004-05 school year.

Plaintiff cannot withstand a motion for summary judgment on her termination claims on the basis of this argument. An examination of the two-page worksheet reveals that the second page begins with paragraphs four and five, which indicate that there was a previous page. (*See* Worksheet, Ex. 8 to Perrone Dep.). The second page clearly was not a stand-alone document, and it was Plaintiff's responsibility to ensure that the document she signed

9

was accurate. "If one who signs a paper can read and write, and is under no duress when he or she signs it, the law presumes that under such circumstances it is signed with a full knowledge of its contents." *In re McCready's Estate*, 175 A. 554, 557-58 (Pa. 1934) (internal punctuation marks and citations omitted); *see also Thrasher v. Rothrock*, 105 A.2d 600, 604 (Pa. 1954); *T.W. Phillips Gas & Oil Co.*, 84 A.2d 301, 302 (Pa. 1951)). Defendant correctly points out that Plaintiff "argues that it was the District's fault that she did not obtain the required Certificate. She cites to no authority for the argument that the District had any obligation to ensure that she obtain her Certificate, and no such authority exists." (Defendant Reply Brief, Doc. 41, at 2).[7]

Plaintiff does not dispute that Pennsylvania law requires all teachers to be certified before they may teach (24 P.S. § 12-1202). It is Plaintiff's burden to establish each element of a *prima facie* case, but she has not shown she was qualified to continue teaching. Because Plaintiff was not qualified to teach under state law in April 2008 when Defendant terminated her employment, the Court will not reach the issue of whether she was treated differently from similarly situated male employees.

Therefore, the Court will adopt in part and reject in part Magistrate Judge Methvin's R&R on Counts I and III: the Court will adopt the recommendation to find that Plaintiff was over the age of forty and was terminated, but will reject the recommendation to find that

---

[7] The Court notes that through her union, Plaintiff could have pursued a grievance wherein she could have argued that her termination was improper. Under state law, her grievance would be required to go to arbitration. 43 P.S. § 1101.903. Plaintiff, however, chose not to pursue a grievance because she "felt that [her] union representative didn't do anything to help [her] in the first place" (Sadowski Dep. at 49:7-50:3), and filed this Title VII/ADEA action for age and gender discrimination instead. An arbitrator would have used a "just cause" standard for Plaintiff's termination, which might have led to a different outcome than this Court reaches today.

Plaintiff established a *prima facie* case of age discrimination with respect to her termination, thereby precluding the need to shift the burden to Defendant to articulate a legitimate, non-discriminatory reason for terminating her. With respect to Plaintiff's gender discrimination claim, the Court will adopt the Magistrate's conclusion that Plaintiff was over the age of forty and was terminated, but will reject the assumption that she was qualified. Ultimately, the Court will adopt the conclusions of the R&R and will grant Defendant's Motion for Summary Judgment with respect to Counts I and III.

*ii. Defendant's Decision Not to Re-Hire Plaintiff*

As stated above, to establish a *prima facie* case of age discrimination, Plaintiff must show that: (1) she is forty years of age or older; (2) the defendant took an adverse employment action against her; (3) she was qualified for the position in question; and (4) she was ultimately replaced by another employee who was sufficiently younger to support an inference of discriminatory animus. *Burton*, 2013 WL 616973, at *5 (citing *Smith*, 589 F.3d at 689).

It is undisputed that Plaintiff was over the age of forty at the time the Board decided not to re-hire her, which constituted an adverse action. Unlike her claims for age discrimination with respect to termination, by the time the Board hired Sue Walton, Plaintiff was qualified to teach because she had obtained her Level II Certification. The evidence shows that Sue Walton was forty, while Plaintiff was fifty, a difference of ten years. Defendant argues that under *O'Connor v. Consolidated Coin Caterers Corp.*, Plaintiff cannot

rely on the ten-year age gap alone to establish her *prima facie* case. 517 U.S. 308, 116 S. Ct. 1307, 134 L. Ed. 2d 433 (1996). However, there the Supreme Court said:

> In the age-discrimination context, . . . an inference [of age discrimination] cannot be drawn from the replacement of one worker with another worker insignificantly younger. Because the ADEA prohibits discrimination on the basis of age and not class membership, the fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class.

*Id.* at 312 (using the hypothetical example of a 40-year-old replaced by a 39-year-old). Thus, far from undercutting Plaintiff's *prima facie* case, *O'Connor* supports Plaintiff. Though Defendant questions whether Walton's age of forty was "sufficiently younger to support an inference of discriminatory animus," the Court finds that Plaintiff has established a *prima facie* case of age discrimination, and so, the burden shifts to Defendant to articulate a legitimate, non-discriminatory reason for not re-hiring Plaintiff.

"This burden is 'relatively light' and is satisfied if the employer provides evidence, which, if true, would permit a conclusion that it took the adverse employment action for a non-discriminatory reason." *Burton*, 2013 WL 616973 at *6 (citing *Tomasso v. Boeing Co.*, 445 F.3d 702, 706 (3d Cir. 2006)). "At this stage, 'the defendant need not prove that the articulated reason actually motivated its conduct.'" *Id.* (citing *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 189 (3d Cir. 2003)).

Defendant argues that it hired Sue Walton because she was more qualified than Plaintiff. In support of this contention, Defendant cites to two typos in Plaintiff's May 6, 2008

12

letter to Perrone requesting unpaid leave[8] and Perrone's favorable impression of Walton during her interview when Walton provided a binder of her previous work which indicated "she had organized clubs. Her kids were involved in some kind of a business thing with the bank. She did a lot of work with them." (Perrone Dep., at 70:22-71:4; 92:3-10; *see also* Plaintiff's May 6, 2008 letter, Ex. 10 to Perrone Dep.). It is undisputed that Perrone recommended that the Board hire Sue Walton and that the Board, the ultimate decision-maker, hired her.[9] (*Id.* at 50:9-51:4). What is in dispute, however, is the Board's reasons for hiring Sue Walton over Plaintiff. Defendant has not provided any evidence of what the *Board* considered when deciding whom to hire, only what evidence *Perrone provided to the Board*. As such, Defendant has not met its "relatively light" burden of production to rebut Plaintiff's *prima facie* case, and Count III, Plaintiff's claim for age discrimination for failing to re-hire her (Count II), will remain for trial.

It is true that Plaintiff admitted in her deposition that she had "no idea why the School District hired [Walton] instead of me, other than she was younger and maybe the pay would be cheaper. I don't know. I can't give you a definite answer on that." (Sadowski Dep. at 63:2-15). She also admitted that nobody at the district or anyone associated with the district told her that Walton was hired because Walton was younger than Plaintiff or that Walton would be a cheaper hire. (*Id.* at 63:16-23). Rather, Plaintiff questioned Walton's

---

[8] The Court notes that this letter was not a part of Plaintiff's application packet because she sent the letter to Perrone prior to her termination.

[9] According to Perrone's recollection, two Board members were absent on the night of the vote to hire a Business Education teacher, but he had a quorum. "I had the five votes. There were two, I think, that abstained or didn't vote or said no, one or the other." (Perrone Dep., at 90:9-19).

13

qualifications: "I just know that she wasn't a teacher for as long as I was." (*Id.* at 63:2-5). It is also true that as a matter of law, a plaintiff's subjective beliefs about whether she was more qualified than another applicant have no bearing on the employer's hiring decisions. "It is not this court's role to second-guess an employer's business judgment as to who is more qualified for the job." *Sarmiento v. Montclair State Univ.*, 513 F. Supp. 2d 72, 89 (D.N.J. 2007) (citing *Dungee v. Ne. Foods, Inc.*, 940 F. Supp. 682, 689 (D.N.J. 1996)). Rather, "[i]t is the perception of the decisionmaker that is relevant, not the plaintiff's perception of herself." *Dungee*, 940 Supp. at 689 (internal citations omitted). "The plaintiff's subjective belief that she was more qualified for the job does not create an issue of fact for the jury." *Sarmiento*, 513 F. Supp. 2d at 89 (internal citations omitted). Had Defendant properly rebutted Plaintiff's *prima facie* case, Plaintiff's statement may have prevented her from proving pretext.

Thus, the Court will adopt the R&R in part and find that Plaintiff has established a *prima facie* case of age discrimination with respect to Defendant's alleged failure to re-hire her. However, the Court will reject the R&R in part and find there is a dispute of fact as to whether Defendant has met its burden of production. As such, Defendant's Motion for Summary Judgment with respect to Count II will be denied.

## IV. Conclusion

For the foregoing reasons, the Court will adopt in part and reject in part Judge Methvin's Report and Recommendation (Doc. 43), and grant Defendant's Motion (Doc. 31)

14

in part and deny it in part. The Court will grant Defendant's Motion for Summary Judgment on Plaintiff's claims for age discrimination and gender discrimination with respect to her termination (Counts I and III). However, the Court will deny Defendant's motion on Plaintiff's claim for age discrimination with respect to Defendant's failure to re-hire her (Count II). A separate Order follows.

Robert D. Mariani
United States District Judge